ELLEN OSGOOD *vs.* OMER P. THERRIAULT.

Essex. April 2, 1935. — April 30, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, LUMMUS, & QUA, JJ.

*Landlord and Tenant*, Common hallway, Lights. *Negligence*, Invited person, Licensee, Of one owning or controlling real estate, Contributory.

Evidence, that a tenant in an apartment building went to a back hallway therein, where he had never been previously, for the purpose of getting screens for his apartment from a pile of screens in the hallway, but that he did not do so at the invitation of the owner of the building or of the janitor, in whose keeping the screens had been placed by the owner, did not warrant a finding that the tenant was an invitee of the owner while in the hallway; he was a mere licensee.

Even if the owner of an apartment building owed a tenant therein, who was injured when he fell in a dark hallway, the duty of keeping the hallway lighted, no breach of that duty was shown by evidence merely that there was no bulb in the electric fixture in the hallway at the time of the tenant's fall, there being no evidence that the absence of the bulb was due to any fault of the owner, or that he knew of its absence, or that, even if he did know of its absence, he had failed to exercise reasonable care to restore it before the tenant was injured.

At the trial of an action by a tenant in an apartment building against the owner thereof for personal injuries sustained when the plaintiff fell over a step in a hallway, a finding of contributory negligence on the part of the plaintiff was required by his testimony that he had never been in that hallway before, that it was dark therein at the time of his fall, and that he was "poking in the dark" and did not see the step.

TORT. Writ dated November 17, 1931.

The action was tried in the Superior Court before *Gray,* J. Material evidence is stated in the opinion. The judge ordered a verdict for the defendant. The plaintiff alleged an exception.

*W. E. O'Brine,* (*E. A. Coffey* with him,) for the plaintiff.
*J. F. Doyle,* for the defendant.

PIERCE, J. This is an action of tort tried to a jury to recover damages alleged to have been sustained by the plaintiff, a woman sixty-five years of age, by reason of falling over a step in a stairway leading from the fourth to the third floor of an apartment house, of which the plaintiff was a tenant and the defendant the owner.

The apartment house, located at 100 Lafayette Street, Salem, had been occupied by the plaintiff for several years prior to April 25, 1931, the day of the accident. It had two stores on the first floor and fifteen apartments on the three floors above. The plaintiff testified that the hallways "were never very well lighted when she went to live there and that lots of times the lights wouldn't be on until 10 or 10:30 P.M." She further testified as follows: She lived on the third floor. On the night of her accident, which occurred at about 7:15 P.M., a Mrs. Shay, who lived on the fourth floor, called to her from that floor that she would help the plaintiff "to get her screens down." After leaving her hat and coat in her apartment the plaintiff went to the fourth floor by way of the main stairway. There was a front stairway and a rear stairway at the end of the hallway. The screens were stored in a back hallway on the fourth floor. The plaintiff went with Mrs. Shay down a corridor to the hallway of the back stairs. This was the first time she had been in that back hall and the first time she ever was up that way. From the back hallway to her apartment

it was nearer than it was from the main hallway. There was a railing in the hallway and a window at the end of it near the stairs. The screens were piled near the hall door. The janitor had put on the screens for her in the spring before, and removed them. She did not know where he kept them. She had been asking the janitor for her screens for two weeks before the accident. She inquired of Mrs. Shay for the janitor on the night of the accident. She went to get the screens to be sure to get some good ones before the other tenants took them. She would have to get the janitor to put on some of the screens anyway; even if she brought them down to her room she would expect him to come and put them on. Mrs. Shay took four screens out of the pile in a jog in the side of the rear hallway and handed two of them to the plaintiff, who took them in her left hand and walked along the hall. There was no light in the hall, and she was about to shift the screens into her other hand when she fell over a "funny" step which she thought was a platform. Just before she fell Mrs. Shay said to her: "Let me go ahead of you," and the plaintiff said: "I will be all right." She was "poking in the dark" and did not see any step. The railing was on her left hand side and she had her left hand on it when Mrs. Shay gave her the screens near the step. Mrs. Shay said to her just before she fell, "Hurry up," and the plaintiff replied, "Wait a minute," took a step and fell over the step. Her arm went through the window and she was badly hurt. She could not tell how she fell. She was in a position of safety when she took the one step. She noticed that there was no light and that it was dark when she started in the "little hall."

The evidence warranted a finding that when the plaintiff entered the building lights were on on the stairs from the first to the second and the second to the third floor; and that when she went up the third flight to Mrs. Shay's the lights were on on the front stairs and the stairs were light enough for her to see. The plaintiff had never been in the rear part of the third floor and whenever she had occasion to go up to Mrs. Shay's she always went up the front way. She had never used the flight of stairs where she fell before

the night of the accident, and she did not know what the lighting condition there had been at any time from the beginning of her tenancy. There was evidence that there was no bulb in the electric fixture of the hallway where the plaintiff fell. There is no evidence to show when or by whom the bulb had been removed. At the close of the evidence the judge allowed a motion of the defendant that a verdict be directed in his favor. The case is before this court on the facts shown by the evidence most favorable to the plaintiff's contentions.

It is plain that the verdict for the defendant was directed rightly. The common hallway leading to the plaintiff's apartment was properly lighted. The main stairway leading to the fourth floor likewise was lighted. The plaintiff's visit to the back hallway was solely for her own ends, that is, to get screens for her apartment windows before other tenants took them. She did not go for them at the invitation of the defendant or at the invitation or suggestion of the janitor, in whose keeping the screens were placed by the defendant. In a word, the plaintiff, on the evidence, was a mere licensee when she took the screens from the place of their keeping and was in the hallway where they were kept. As such the defendant owed her no duty to keep that hallway lighted. Moreover, if we should assume an invitation to go to the hallway for the screens, there was no evidence that the absence of the bulb was due to any fault of the defendant or his agents and servants; nor that he or they had knowledge of the removal of the bulb, or, knowing of its absence, had failed to exercise reasonable care to restore it. Whether the plaintiff was an invitee or a licensee she knew and appreciated the measure and the degree of darkness and was not misled by any act or omission of the defendant. As a person of ordinary experience she knew that one who walks in the total darkness of a strange hallway is likely to encounter obstructions to her passage and pitfalls to her feet. *Benton* v. *Watson*, 231 Mass. 582, 584.

*Exceptions overruled.*