No. 156004

## CHARLES MERRYFIELD

v.

## BOSTON EDISON COMPANY

*Present:* Adlow, C.J., Riley, Lewiton, J.J.

*Adlow, C. J.* Action of tort in which the plaintiff seeks to recover for personal injuries sustained in a fall into an open manhole due to the negligence of the defendant. The defendant pleaded a general denial and contributory negligence on the part of the plaintiff.

*There was evidence tending to show that* the plaintiff while walking in a southerly direction on the westerly side of Washington Street in Boston at 2:00 p.m. on November 14, 1965, reached the corner of Temple Place; that at the time the sun was shining and that he intended to cross Temple Place and continue in a southerly direction on Washington Street; that when he reached the corner the sun was shining in his eyes and he moved to the right as he crossed to get into the shade. When he reached the middle of Temple Place he stepped

to his right and fell into an open manhole; that as he stepped into the manhole somebody grabbed him and pulled him back up.

*There was further evidence that* the plaintiff had impaired vision which entitled him to carry a card under the provisions of G.L. c. 69, § 19, authorizing free transportation, but that he never used a white cane nor a seeing-eye dog, and that he did not consider his defective vision a handicap with respect to walking on the city streets; that his defect was that he had tunnel vision and could see straight ahead, and any obstruction in his path if he were looking at it. That as he crossed Temple Place he was looking at the street and looking at his intended path, but he did not see the open manhole or any men working around the manhole. That he did not notice any cones or red flags or other warnings, and that after he walked over to the curb he observed one of the men go to a yellow truck, grab some yellow steel bars and put them around the open manhole.

The defendant offered evidence of one Edward Halligan who was the leader of a cable conduit group employed by the Boston Edison Company; that at the time new cables were being installed; that beside the open manhole was a spool some 2½ feet high containing spring steel; that there were two dozen cones set out on Temple Place, each cone being about two feet high, whose color was blaze orange

with a white base; that on every other cone
there was a red flag protruding from the top
of the cone; that Temple Place at this time was
closed to motor vehicle traffic; that there were
two lanes of cones across Temple Place through
which pedestrian traffic was channelled; that
this channel was easterly of the manhole and
located between the manhole and Washington
Street; that the manhole was about ten feet
from Washington Street and the westerly side
of the channel was about five feet from the
manhole; that there was also a row of cones
a few feet westerly of the manhole across
Temple Place, and several cones in a circular
fashion around the manhole and a few feet
from it; that there was also a V-shaped frame
bar arrangement on the northeasterly side of
the manhole, and a few feet from the manhole;
that these cones and other barriers had been
set up and posted at about 7:00 a.m. that day
when work was commenced, and had not been
changed either in number or position since
that time; that pedestrial traffic had increased
during the day and that the witness and two
other men were working in the immediate
vicinity of this manhole within a few feet of
it, and a fourth man was in the manhole at
the time of the incident; that he did not notice
the plaintiff until one of his co-workers grabbed
him as he stepped into the manhole.

This co-worker testified that he was one of the
three men working in the vicinity of the open

manhole and observed the plaintiff as he stepped into the manhole with one foot, and he grabbed the plaintiff.

At the close of the evidence the defendant asked the court to rule that

> "4. The evidence does not warrant a finding that the warnings posted by the defendant were not adequate to bring the dangerous condition to the attention of an ordinary prudent person exercising care for his own safety according to the standards of one in perfect physical condition."
>
> "5. The evidence does not warrant a finding that the plaintiff put forth a greater degree of effort for his own safety in order to attain that standard of care which the law has established for everybody in view of his infirmity of sight."

The court denied both of these requests.

Annexed to these rulings was the following Finding of Fact:

"I find as a fact that the plaintiff was in the exercise of due care and that the defendant was negligent in that the defendant failed to exercise that degree of care necessary to prevent injury to a pedestrian in not having a Guard Rail around an open manhole cover."

The court found for the plaintiff and the defendant being aggrieved brings this report.

It was error to deny the defendant's request for a ruling that the precautions taken by the defendant to warn pedestrians of the dangerous condition, as testified to by the defendant's employees, warranted a finding that the defendant had used due care in its work at the manhole. It is hard to conceive of any greater precautions that could have been taken by one

engaged in a similar project. If the court believed that such precautions had been taken, a finding for the defendant certainly would have been warranted. The conditions in the case under review are to be distinguished from those in *Smith* v. *Wildes,* 143 Mass. 556, 559.

The court in its finding of fact places great emphasis on the fact that the defendant did not have a guard rail around the open manhole. According to the report the defendant offered evidence to the effect that a U-shape frame bar arrangement was placed on the northeast side of the manhole. We cannot agree with the finding of the court that the failure to completely enclose the manhole was sufficient to establish the defendant's liability. While work was going on it was indispensible that the men working about the manhole should have ready access to it. It was necessary that a part of the area should be unfenced. Of course, if the court as tried of the facts had disbelieved the defendant's version of the event, its finding of negligence would have been warranted. However, in denying that the evidence warranted a finding of due care, the court has virtually ruled that anyone who works at a manhole without completely fencing it does so at his peril. We do not understand this to be the law

There is an additional consideration which is important.

The denial of the defendant's fifth request ignores the notorious facts about which there

can be no question. An open hole in broad daylight, a wire reel, 2½ feet high, at one side, and an employee standing so close to the hole that he was able to catch the plaintiff in the act of falling; all these combined were sufficient to attract the attention of any normal person. While the defendant did not consider his defective vision a handicap in walking the city streets, and stated that he could see any obstruction in his path, his own testimony reveals that he was mistaken about his own capabilities. He saw none of the things that concededly were there. In the exercise of common prudence one with defective vision must usually, as a matter of common knowledge, take more care in walking upon the streets and avoiding obstructions than a person with good eyesight in order to reach the standard established by law for all persons alike. *Keith v. Worc., etc. St. Ry.,* 196 Mass. 478, 483. To proceed to cross a street, knowing it to be a busy thoroughfare under circumstances, where on the plaintiff's own story, he was temporarily blinded, is to be wanting in the exercise of due care. *Perry v. Loew's Boston Theatre Co.,* 291 Mass. 332, 334; *Lucien v. Norcross,* 310 Mass. 213, 215; *Smith v. Simon's Supply Co.,* 322 Mass. 84, 85.

**Finding for the plaintiff vacated. Finding to be entered for the defendant.**

ROBERT E. GALVIN
of Boston for the Plaintiff
RALPH C. COPELAND
of Boston for the Defendant